522

JOSÉ SUÁREZ MARTÍNEZ, Petitioner, *v.* SUPERIOR COURT OF PUERTO RICO, BAYAMÓN PART, JORGE MELÉNDEZ VELA, JUDGE, Respondent; ANDREA MIRANDA, Intervener.

No. 2873. Decided May 28, 1962.

*F. Gallardo Díaz* for petitioner. *Mario A. Rodríguez* for plaintiff, intervener in the case.

Division composed of Mr. Acting Chief Justice Pérez Pimentel, Mr. Justice Blanco Lugo, and Mr. Justice Dávila.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

On January 3, 1961 Andrea Miranda brought an action of divorce against José Suárez Martínez on the ground of adultery. In the complaint she specified the properties belonging to the community partnership, among which she included the sum of $4,573.92 which was deposited in a savings account in the Banco Popular de Puerto Rico. On

the same date she moved for an order directing the banking institution not to authorize and make withdrawals on that savings account, alleging that the amount originally deposited was $7,173.92 and that it had been reduced to the afore-mentioned sum as a result of different operations carried out by the defendant who was making transactions and payments without her intervention; that the defendant had expressed his purpose to deplete the funds completely and thus deprive the plaintiff of any participation in such funds to which she might be entitled; and that the plaintiff feared that her husband would squander the money saved, thereby causing her the consequent difficulties and inconveniences. Two days later the trial court issued an order granting the request, but providing expressly "Let notice be served on the defendant, apprising him that if he has any objection to this order he may appear for hearing on January 12, 1961 at 2:00 p.m." The complaint as well as the order were served on the defendant on January 9. In the absence of his attorneys, he moved personally for continuance of the hearing.

After several incidents which we need not relate here, on July 18 the defendant challenged the order of January 5 the purpose of which was to freeze the savings, alleging that it "is erroneous and contrary to law." This motion was denied and we issued a writ of certiorari to review the order issued.[1]

The petitioner maintains that the order challenged is not comprised within any of the provisional measures to which a suit for divorce may give occasion—§ § 98 to 101 of the Civil Code, 31 L.P.R.A. § § 341 to 344; and that it is void because it was issued without giving notice thereof and with-

---

[1] The petition for certiorari also prayed for review of an order issued on April 14, 1961 to the Banco Popular de Puerto Rico to issue a check for $150 out of the savings account to pay the sum allowed for attorney's fees by plaintiff, in pursuance of the judgment by default sustaining the complaint. However, an examination of the record reveals that although

out holding a hearing as required by Rule 56.2 of the Rules of Civil Procedure and without posting bond as required by Rule 56.3.

■ Chapter II, Title IV, Book First of the Civil Code deals with the provisional measures to which a suit for divorce may give rise, and refers specifically to the provisional custody and care of the minor children, § 98, 31 L.P.R.A. § 341; the designation of a domicile for the wife when she is suing for divorce, § 99, 31 L.P.R.A. § 342; and the fixing of an allowance for support including *litis expensas*, § 100, 31 L.P.R.A. § 343. It is further provided that from the day the judicial action is brought no debt contracted by either spouse on account of the community property shall be valid unless it is authorized by the court, § 101, 31 L.P.R.A. § 344. These provisions were patterned after §§ 146, 147,[2] 148, and 150 of the Civil Code of Louisiana, 1 West, Louisiana Civil Code 716–44. It is strange to observe that the Puerto Rican lawmaker failed to incorporate a provision similar to that embodied in § 149 of the Civil Code of Louisiana which authorizes the wife who is suing for divorce, "for the preservation of her interests," to require an inventory and appraisement to be made for the movables and immovables which are in possession of her husband, and an injunction restraining him from disposing of them in any manner.[3]

---

the order was carried out, thereafter—in setting aside the judgment rendered—plaintiff's attorney deposited with the clerk the amount paid to him.

On July 28 the plaintiff moved for an allowance for support and a reasonable sum for *litis expensas*, and after proper hearing the court allowed the sum of $150 for the latter item, "which were paid by virtue of an order of this Court of May 16, 1961."

For the reasons stated, the review of the order of April 14 has become academic.

[2] The measure in connection with the designation of domicile was repealed in Louisiana in 1928.

[3] The same purposes were accomplished, as respects the wife's property, under the fifth rule of § 68 of the Spanish Civil Code as it stood until April 24, 1958, which in its pertinent part provided that, after the

Among the cautionary measures adopted during the trial of divorce, § 74 of the Law of Civil Marriage of the Argentine Republic provides that " . . . if the husband's action shall result in fraudulent alienations or waste of the community property, the wife may move the presiding judge to require an inventory thereof and to place them in charge of another administrator, or that the husband give a bond in the amount of such properties." See GOLDSTEIN AND MORDUCHOWICZ, *El Divorcio en el Derecho Argentino* 354–56 (Logos ed., Buenos Aires, 1955), who maintain that the enumeration contained in that section—inventory, administrator, and bond—is not conditioned and that the judge may order other measures. In Bolivia the law provides that immediately after the filing of the complaint there shall be made an inventory of the community property and that the *personal* community property shall be divided equally between the spouses. GALLARDO, *Divorcio, Separación de Cuerpos y Nulidad de Matrimonio en las Naciones Latino-Americanas* 86 (Diana ed., Madrid, 1957). Uruguay recog-

---

complaint of divorce has been presented and permitted, the court had power "to adopt such measures as shall be necessary to prevent the husband who has given cause for the divorce . . . from injuring the wife by his administration of the property." In 1 *Comentarios al Código Civil Español* 431 (1943 ed.), MANRESA states that the rationale of this precept is clear and comprehensible: "Although natural instincts induce man to think constantly of his children's future and prompt him, in a desire to secure it, to make efforts not only to conserve but also to increase the family property, practice has shown that nowadays, unfortunately, husbands who under the effects of an action of nullity or of divorce are dominated by a desire to take vengeance or by a sense of indignation, pay no heed to their conscience and their affection and try to squander the property which has been entrusted to them."

As of the aforesaid date specific rules were incorporated in § 68 for the administration of the conjugal property in litigation and, among other things, the judge is authorized, under the circumstances of the case, to confer exceptionally to the wife the administration of the community property or of any of them, and expressly provides that "judicial authorization shall be required for those acts which exceed *the mere administration* of the community property, regardless of the spouse who administers the same." MEDINA Y MARAÑÓN, 1 *Leyes Civiles de España*, 50.

nizes to the judge the power to provide, at the parties' request or *de officio* for all measures which may seek to protect the community property against risks resulting from the husband's mismanagement. GALLARDO, *op. cit.* at 569.

■■ According to our holding in *Alameda* v. *Registrar*, 76 P.R.R. 216, 225 (1954), construing the provisions of § 101 of the Civil Code, "when a debt is contracted by the husband or wife, from the day the suit is filed until the day the divorce decree is final, the spouse contracting it shall be solely liable therefor, unless expressly authorized by the court where the divorce suit is being heard, and the conjugal partnership, as such, shall not be liable to any creditor for the debts contracted by either of the spouses while divorce is pending." This is as to the effect of the institution of the action of divorce respecting the creditors. However, with respect to the spouses between themselves, there is nothing to prevent either of them from attempting to protect his or her interests in the community property in order to avoid that the other may squander them or dispose at his or her pleasure of some item of the assets, irrespective of whether such act may be taken into consideration upon subsequent liquidation and charged to him the amount of value thereof.

■■ However, for the purposes of deciding this case it may be conceded that the order of freeze challenged is not justified as one of the provisional measures referred to in the Civil Code in the event an action of divorce is begun. Yet, the existence of these provisions does not detract from the virtuality of Rule 56 of the Rules of Civil Procedure, dealing with provisional remedies. It is significant that in stating the general principles on the matter, Rule 56.1 provided that "*in every action* . . . the court may make such temporary order as may be necessary to secure the effectiveness of the judgment," and that the norm established for determining its propriety is that the measure be "advisable," considering the interests of all the parties. In this sense

this rule grants to the parties a provisional remedy, regardless of the nature of the claim, since it expressly abandoned the language of the prior Act to Secure the Effectiveness of the Judgments (Act of March 1, 1902, 32 L.P.R.A. § 1069 *et seq.*), which referred to "every person who shall bring an action for the fulfillment of any obligation." If the adoption of provisional measures is justified in any action, it is in the action for divorce, an inherent consequence of which is the dissolution of the community partnership, in order to prevent either of the spouses from being defrauded by acts of concealment or disposition of the properties. Experience teaches us that very frequently a woman is divested of her just participation in the community partnership by acts on the part of the husband under the guise of the provision conferring to him the administration of the community property. It is true that this situation is not alarming as respects real properties, since in order to alienate them the concurrence of both spouses is necessary, but the risk as respects personal properties is great, especially if we consider that in modern economics a great portion of the assets are represented by chattels such as shares, bonds, and credit papers.

██ On the other hand, notwithstanding the taxative civil provisions on provisional measures which may be adopted, we have sanctioned the appointment of a receiver to take possession of the properties belonging to the conjugal partnership at any stage of an action of divorce and while it is being prosecuted. *López* v. *District Court of Guayama*, 31 P.R.R. 130 (1922). We fail to see how it may be maintained that an order of more limited effects, since it does not comprise all the properties of the conjugal partnership but having the same purpose of preserving the property, is contrary to law.

██ We have not overlooked the fact that Rule 56.1 refers to the adoption of measures necessary "to secure the effective-

ness of the judgment." This expression can not be interpreted in its strictly literal sense, and in the specific case of an action of divorce it can not be ignored that one of the consequences of the judgment which may be rendered for the plaintiff is the dissolution and liquidation of the community partnership. It is similar to a situation of an action of filiation in connection with which we have held that a notice of *lis pendens* be entered on the margin of the description of the father's estate—which is a manner of effectiveness—since if there is a declaration of filiation the child shall have the right to inherit from his presumptive father. *Olivera* v. *Registrar*, 51 P.R.R. 399 (1937). In this connection, the effect of an order such as that obtained by the plaintiff herein is the protection of her right to share in the entire community property as it existed at the time of bringing the action.

 The order issued in this case partakes of the nature of a prohibition to alienate which may be issued *ex parte* without holding a hearing. Rule 56.4. But even if such requirement were necessary, it may be maintained that it was substantially met in this case since the order issued gave the defendant an opportunity to appear within a reasonable period to raise objections. Certainly, the freezing of the funds did not prejudice the defendant at all since the measure was aimed simply at their conservation.[4] Regarding the giving of bond, Rule 69.6 provides that no bond shall be required of either spouse in an action of divorce, of family relations, or community property, unless the court otherwise provides in worthy cases.

For the reasons stated, the writ issued will be quashed and the order entered by the Superior Court, Bayamón Part, on January 5, 1961 will be affirmed.

---

[4] The absence of any prejudice to the defendant is corroborated by the lapse of time between the date of notice of the order of freeze and the filing of the motion challenging the same. We suspect that if he had not been summoned and punished for contempt for failure to pay the allowance for support this incident would not have occurred.